CAIR LEGAL DEFENSE FUND
Lena F. Masri (DC # 1000019) α
  lmasri@cair.com
Gadeir I. Abbas (VA # 81161) α β
  gabbas@cair.com
Carolyn M. Homer (DC # 1049145) α
  chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317

Douglas Laycock (TX # 12065300)*
  dlaycock@virginia.edu
727 E. Dean Keeton St.
Austin, TX 78705
Phone: (512) 232-1224

*Attorneys for Plaintiffs*

α *Admitted to practice in this district.*
β *Licensed in VA, not in D.C.*
  *Practice limited to federal matters.*
* *Pro hac vice* motion forthcoming

**◘ORIGINAL**

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 1 2019

JAMES W. McCORMACK, CLERK
By:_____
                          DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **GREGORY HOUSTON HOLT,** Inmate # 129616; | Case No. 19-cv-_____ |
| **RODNEY MARTIN**, Inmate # 132396; and, | **VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF** |
| **WAYDE STEWART**, Inmate # 065252; | **JURY TRIAL DEMANDED** |
| Plaintiffs, | 5:19 - CV - 81 - BSM -JTK |
| v. | |
| **WENDY KELLEY**, Director, Arkansas Department of Correction, in her official capacity only; | This case assigned to District Judge _Miller_ and to Magistrate Judge _Kearney_ |
| **DALE REED**, Chief Deputy Director, Arkansas Department of Correction, in his official capacity only; | |

**DEXTER PAYNE**, Deputy Director of Institutions, Arkansas Department of Correction, in his official and individual capacities;

**JOSHUA MAYFIELD,** Administrator of Religious Services, Arkansas Department of Correction, in his official capacity only;

**AUNDREA CULCLAGER**, Warden, Tucker Maximum Security Unit, Arkansas Department of Correction, in her official and individual capacities;

**TOMMY BOURGEOIS**, Chaplain, Tucker Maximum Security Unit, Arkansas Department of Correction, in his official and individual capacities;

**DANNY BURL**, former Warden, Tucker Maximum Security Unit, Arkansas Department of Correction, in his individual capacity only;

**DEANGELO EARL**, Warden, Grimes Unit, Arkansas Department of Correction, in his individual capacity only;

**TOM BRADSHAW**, Chaplain, Grimes Unit, Arkansas Department of Correction, in his individual capacity only;

**BILLY STRAUGHN**, Warden, Cummins Unit, Arkansas Department of Correction, in his individual capacity only; and,

**JIM BABCOCK**, Chaplain, Cummins Unit, Arkansas Department of Correction, in his official and individual capacities;

       Defendants.

## COMPLAINT FOR
## DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiffs **GREGORY HOUSTON HOLT a/k/a ABDUL MAALIK MUHAMMAD**, Inmate # 129616; **RODNEY MARTIN**, Inmate # 132396; and **WAYDE STEWART**, Inmate # 065252 (collectively "Plaintiffs"), by and through their undersigned counsel, CAIR LEGAL DEFENSE FUND ("CAIR") and MR. DOUGLAS LAYCOCK, ESQ., file this Complaint for Declaratory, Injunctive, and Monetary Relief against Arkansas Department of Correction ("ADOC") officials, Defendants Wendy Kelley, Dale Reed, Dexter Payne, Joshua Mayfield, Aundrea Culclager, Tommy Bourgeois, Danny Burl, DeAngelo Earl, Tom Bradshaw, Billy Straughn, and Jim Babcock (collectively "Defendants"). The Complaint alleges violations of the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, pursuant to 42 U.S.C. § 1983 and Defendants' failure to accommodate Plaintiffs' sincere Muslim practices.

### Introduction

1.      The Arkansas Department of Correction ("ADOC") has long struggled to accommodate the religious exercise of its Muslim inmates. Despite decades of litigation and grievances regarding its failure to accommodate basic Islamic religious practices – including Friday prayer services (known as *Jumu'ah*[1] prayer), growing beards, and wearing *kufis*[2] – ADOC continues to fail to provide Muslim inmates with the basic and necessary accommodations to practice their faith.

2.      Just as other religious faith backgrounds, including Christianity and Judaism, command their adherents to observe an end-of-the-week holy day through congregational prayer and spirituality

---

[1] *Jumu'ah* prayer is a congregational prayer followed by a sermon, called a *khutbah*, performed by Muslims on Fridays just after noon. Spelling and italics of Arabic words has been updated throughout this Complaint for consistency.

[2] A *kufi* is a brimless, short, and rounded cap worn by Muslim men.

(known in Christianity and Judaism as the Sabbath), Muslims are commanded to observe Fridays through congregational prayer and spirituality.  Moreover, just as Christian Sunday services are led by a priest or pastor and Jewish Sabbath services by a rabbi, *Jumu'ah* prayers are led by an *imam*.

3.       However, ADOC has unlawfully prevented its Muslim inmates, including Plaintiffs, from observing *Jumu'ah* prayers in accordance with their sincerely-held beliefs.  ADOC is forcing Plaintiffs and other Muslims to hold a combined religious service (in addition to religious study groups and other religious programming) with other religious faith groups – namely, Nation of Islam ("NOI") and Five-Percent Nation/Nation of Gods and Earths ("NGE").

4.       Accordingly, ADOC has forced Plaintiffs and other Muslim inmates to violate their sincerely-held religious beliefs.  ADOC gives them the choice to attend a combined religious service led by other faith groups, or not attend any religious services at all.  Neither scenario – according to their sincerely-held religious beliefs – fulfills their religious obligations.[3]  No inmate should be forced by a state correctional institution to violate their religious beliefs.

5.       All three Plaintiffs sincerely believe that attending a religious service led by a different faith group is a violation of their core religious principles.

6.       Two of the Plaintiffs – Mr. Martin and Mr. Stewart – have been forced to choose to attend the weekly combined religious services because they felt compelled to do so to maintain their designations as Muslim and to preserve their rights to other religious accommodations, such as participating in the Ramadan meal program.  Mr. Holt, on the other hand, has chosen not to attend the combined religious services in accordance with his sincerely-held religious beliefs; and, as a result, in 2017 he was forced to sacrifice other religious accommodations.

---

[3] Requiring Muslims to attend religious services led by adherents of the NOI or NGE is akin to requiring Christians to attend religious services led by a Jewish rabbi, or Jews to attend religious services led by a Christian priest.

7.      Unsurprisingly, no other faith groups, including a variety of Christian denominations, are forced to choose between attending religious services led by other faith groups, or to forego religious obligations to worship altogether.  In fact, many Christian denominations are permitted by Defendants to hold and attend their own separate religious services.

8.      Defendants have also prevented Plaintiffs from wearing *kufis* in accordance with their sincerely-held religious beliefs.  Plaintiffs may be subjected to discipline if they wear *kufis* without Defendants' permission.

9.      Defendants have imposed policies that substantially burden the rights of Plaintiffs to their free exercise of religion by means that are not the least restrictive, that discriminate against Plaintiffs on the basis of their religious denomination, and that treat Plaintiffs on less than equal terms than other similarly-situated religious groups.

10.     Moreover, Defendants have not identified any compelling government interest for denying Plaintiffs and other Muslim inmates their right to separate religious congregational services and separate religious study groups, or for denying their right to wear *kufis* in accordance with their sincerely-held religious beliefs.

11.     ADOC previously lost a religious accommodation lawsuit brought by Plaintiff Holt regarding the denial of his right to grow a beard; ADOC was required by the United States Supreme Court to permit Plaintiff Holt to grow a religious beard.  *See Holt v. Hobbs*, 135 S.Ct. 853 (2015).

12.     *Holt v. Hobbs* has since become landmark precedent elevating religious protections for prisoners of all faiths nationwide.  Its precedent governs here, requiring Defendants to permit Plaintiffs to attend separate Islamic religious services and to wear *kufis*.

## Jurisdiction and Venue

13.     This is an action for declaratory, monetary, and injunctive relief arising under the First and Fourteenth Amendments to the U.S. Constitution, RLUIPA, and 42 U.S.C. § 1983.

5

14.     This Court has federal question jurisdiction over Plaintiffs' claims of violations of the U.S. Constitution and RLUIPA pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

15.     Plaintiffs' claims for declaratory and injunctive relief are sought under 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

16.     Plaintiffs' claims for monetary relief are sought under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

17.     Plaintiffs' claims for attorneys' fees and costs are predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing parties under 42 U.S.C. § 1983 and RLUIPA.

18.     This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Arkansas.   The Arkansas Department of Corrections is an "institution" within the meaning of 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

19.     Venue is proper under 42 U.S.C. § 1391 because all Defendants operate within the geographical boundaries of the State of Arkansas, and a substantial part of the acts described herein occurred within this District.

### Plaintiffs

20.     Plaintiff Gregory Houston Holt a/k/a Abdul Maalik Muhammad is an individual, a male, a Muslim, and an inmate (# 129616) currently housed at the Tucker Maximum Security Unit within the Arkansas Department of Correction.   Holt previously resided at the Cummins Unit and other Department facilities.   Holt is a "person residing in or confined to an institution" as the term is defined in 42 U.S.C. § 2000cc-1(a).   Holt previously litigated a successful religious challenge to an Arkansas Department of Correction grooming policy which forbade beards.   *See Holt v. Hobbs*, 135 S.Ct. 853 (2015).

6

21.     Plaintiff Rodney Martin is an individual, a male, a Muslim, and an inmate (# 132396) currently housed at the Tucker Maximum Security Unit within the Arkansas Department of Correction.  Martin was recently transferred to the Tucker Maximum Security Unit from the Grimes Unit; he has also resided at multiple other Department facilities.  Martin is a "person residing in or confined to an institution" as the term is defined in 42 U.S.C. § 2000cc-1(a).

22.     Plaintiff Wayde Stewart is an individual, a male, a Muslim, and an inmate (# 065252) currently housed at the Tucker Maximum Security Unit within the Arkansas Department of Correction.  Stewart was recently transferred to the Tucker Maximum Security Unit from the Grimes Unit; he has also resided at multiple other Department facilities.  Stewart is a "person residing in or confined to an institution" as the term is defined in 42 U.S.C. § 2000cc-1(a).

### Defendants

23.     Defendant Wendy Kelley is the Director of ADOC.  Defendant Kelley is the ultimate decision-maker with authority to approve all ADOC policies, procedures, and operations, including religious accommodation policies.  Defendant Kelley is being sued in her official capacity only.

24.     Defendant Dale Reed is the Chief Deputy Director of ADOC.  Defendant Reed is a decision-maker with authority to approve ADOC policies, procedures and operations, including religious accommodation policies, at Cummins Unit and Tucker Unit, facilities where each of the three Plaintiffs resided.  Defendant Reed is being sued in his official capacity only.

25.     Defendant Dexter Payne is the Deputy Director of Institutions of ADOC.  Defendant Payne is a decision-maker with authority to approve ADOC policies, procedures, and operations, including religious accommodation policies, at Grimes Unit and Tucker Unit, facilities where Plaintiffs Martin and Stewart resided.  Defendant Payne is being sued in his official and individual capacities.

26.     Defendant Joshua K. Mayfield is the Administrator of Religious Services of ADOC.  Defendant Mayfield a decision-maker with authority to approve all religious accommodation

policies, procedures, and operations, including programming and religious services at ADOC facilities. Defendant Mayfield is being sued in his official capacity only.

27.     Defendant Aundrea Culclager is the Warden of the Tucker Maximum Security Unit, ADOC.  Defendant Culclager is a decision-maker with authority to approve all policies, procedures, and operations at Tucker Maximum Security Unit.  Defendant Culclager is also responsible for making the ultimate decision on all grievances filed by inmates that reside at Tucker Maximum Security Unit. Defendant Culclager personally discriminated against Plaintiffs Martin and Stewart.   Defendant Culclager is being sued in her official and individual capacities.

28.     Defendant Tommy Bourgeois is the Chaplain at the Tucker Maximum Security Unit, ADOC.  Defendant Bourgeois is a decision-maker with authority to approve all religious policies, procedures, and operations at Tucker Maximum Security Unit.   Defendant Bourgeois is also responsible for making decisions on all grievances that concern religious policies, procedures, and operations filed by inmates that reside at Tucker Maximum Security Unit.  Defendant Bourgeois personally discriminated against Plaintiffs Holt, Martin, and Stewart.  Defendant Bourgeois is being sued in his official and individual capacities.

29.     Defendant Danny Burl was the former Warden of the Tucker Maximum Security Unit, ADOC.  Defendant Burl was a decision-maker with authority to approve all policies, procedures, and operations at Tucker Maximum Security Unit.  Defendant Burl was also responsible for making the ultimate decision on all grievances filed by inmates that reside at Tucker Maximum Security Unit. Defendant Burl personally discriminated against Plaintiff Holt.  Defendant Burl is being sued in his individual capacity only.

30.     Defendant DeAngelo Earl is the Warden of the Grimes Unit, ADOC.  Defendant Earl is a decision-maker with authority to approve all policies, procedures, and operations at Grimes Unit. Defendant Earl is also responsible for making the ultimate decision on all grievances filed by inmates

that reside at Grimes Unit.  Defendant Earl personally discriminated against Plaintiffs Martin and Stewart.  Defendant Earl is being sued in his individual capacity only.

31.     Defendant Tom Bradshaw is the Chaplain at the Grimes Unit, ADOC.  Defendant Bradshaw is a decision-maker with authority to approve all religious policies, procedures, and operations at Grimes Unit.  Defendant Bradshaw is also responsible for making decisions on all grievances that concern religious policies, procedures, and operations filed by inmates that reside at Grimes Unit.  Defendant Bradshaw personally discriminated against Plaintiffs Martin and Stewart. Defendant Bradshaw is being sued in his individual capacity only.

32.     Defendant Billy Straughn is the Warden of the Cummins Unit, ADOC.  Defendant Straughn is a decision-maker with authority to approve all policies, procedures, and operations at Cummins Unit.  Defendant Straughn is also responsible for making the ultimate decision on all grievances filed by inmates that reside at Cummins Unit.  Defendant Straughn personally discriminated against Plaintiff Holt.  Defendant Straughn is being sued in his individual capacity only.

33.     Defendant Jim Babcock is the Chaplain at the Cummins Unit, ADOC.  Defendant Babcock is a decision-maker with authority to approve all religious policies, procedures, and operations at Cummins Unit.  Defendant Babcock is also responsible for making decisions on all grievances that concern religious policies, procedures, and operations filed by inmates that reside at Cummins Unit.  Defendant Cummins personally discriminated against Plaintiff Holt.  Defendant Babcock is being sued in his individual capacity only.

**Islam, Nation of Islam and Nation of Gods and Earth are Different Faith Traditions**

34.     Islam, Nation of Islam, and the Nation of Gods and Earth (also known as the Five-Percent Nation), are three different faith traditions.

35.     Islam is a global religion founded by the Prophet Muhammad on the Arabian Peninsula in 610 A.D.  Islam teaches that the Prophet Muhammad was the final prophet and

9

messenger of a long line of prophets, that include Abraham, Moses, and Jesus, among others.

36.     Islam's holy scripture is the *Qur'an*, as revealed to the Prophet Muhammad.

37.     Plaintiffs and other Muslims adhere to the *sunnah* of the Prophet Muhammad, or the collective body of traditional Muslim practice based on the teachings and actions of the Prophet Muhammad during his life.

38.     Islam is estimated to have more than 1.8 billion adherents worldwide.

39.     The Nation of Islam is a religion founded in 1930 A.D. in Detroit, Michigan by Wallace Fard Muhammad.

40.     The Nation of Islam teaches that Wallace Fard Muhammad was the incarnation of God, his successor Elijah Muhammad was a messenger of God, and the black man is God.

41.     Many of the Nation of Islam's teachings and beliefs are summarized in a 1965 speech from Elijah Muhammad, *Message to the Blackman in America.*

42.     The Nation of Islam is estimated to have approximately 100,000 adherents in the United States.

43.     The Nation of Gods and Earth, also known as the Five-Percent Nation, is a religion founded in 1964 in Harlem, New York.  The Nation of Gods and Earth was founded by Clarence Edward Smith, following a theological dispute between Clarence Edward Smith and Elijah Muhammad.

44.     The Nation of Gods and Earth also teaches that the black man is God.

45.     The Nation of Gods and Earth distributes anthologies, including *Knowledge of Self: A Collection of Wisdom on the Science of Everything in Life*, about its teachings and beliefs.

46.     The Nation of Gods and Earth is estimated to have fewer than 50,000 adherents in the United States.

**Defendants' Religious Accommodation Policies and their Duties to Provide Muslim Inmates Access to *Jumu'ah* Services and Islamic Religious Instruction**

47.     Pursuant to the Arkansas Department of Correction Policy and Procedures Manual provided by the Chaplaincy Department ("ADOC Religion Manual"), Defendants are required "to provide for the religious needs of the committed offenders" within the Department.  ADOC Religion Manual, "Purpose of Religious Services," Policy No. 115.

48.     Further, "[i]t is the policy of the Arkansas Department of Correction to provide those incarcerated in its care the *greatest amount of freedom and opportunity for pursuing individual religious beliefs* and practices as is consistent with safety of inmates and staff, the good order of the institution and accepted correctional practices."  ADOC Religion Manual, "Policy of Religious Services," Policy No. 120 (emphasis added).

49.     In fact, Defendants must "allow worship opportunities for committed offenders with an openness to, a recognition of, and respect for, religious differences."  ADOC Religion Manual, "Objectives of Religious Services," Policy No. 130.

50.     The Chaplain[4] (in this case, Defendants Bourgeois, Bradshaw, and Babcock) is required to be "aware of the different religious beliefs and practices and work in fairness to all." Religion Manual, "The Function of the Chaplain," Policy No. 220 at E2.

51.     The Chaplain is also required to "take into consideration the religious background preferences of the inmates at the Unit/Center and the needs of the population as [free world] groups are selected [by the Chaplain] to minister to the inmates."  ADOC Religion Manual, "Criteria in Determining Freeworld Groups Permitted Into Unit/Center," Policy No. 310 at B.

52.     ADOC is required to hire an Islamic Coordinator, who is "responsible for ensuring

---

[4] "The Chaplain is assigned to a unit under the supervision of a Senior Chaplain, Unit Warden, and Administrator of Religious Services."  ADOC Religion Manual, Policy No. 205 at E.

that Islamic inmates are afforded worship and growth opportunities" and who is tasked with "traveling on a regular schedule to the various units to counsel with inmates, lead *Jumu'ah* Prayer, *Taleem*[5] classes, etc." ADOC Religion Manual, "Positions," Policy No. 205 at B; "Worship" Policy No. 505 at B.

53.     With regards to *Jumu'ah* Prayer, the Islamic Coordinator is required to select "inmate(s) at each unit" that is knowledgeable of the required [Islamic] prayer ritual," and provided that the inmates are approved by the Unit Warden, the inmate(s) are responsible for leading the *Jumu'ah* Prayer. Religion Manual, "*Jumu'ah*," Policy No. 545 at I.A.

54.     In the event the Islamic Coordinator or approved free world Muslim Volunteer is not present, the "ritual of *Jumu'ah* Prayer will be observed followed by a recorded *Khutbah*." Religion Manual, "*Jumu'ah*" Policy No. 545 at II; "Criteria in Determining Freeworld Groups Permitted Into Unit/Center" Policy No. 310 at D; No. 505 at B; "Religious Services" Policy No. 605 at C.

55.     Despite its stated commitment to providing for the religious needs of offenders, ADOC has long struggled to meet the needs of its Muslim population. This includes providing access to Muslims to attend *Jumu'ah* and *Taleem*.

56.     In a 1987 consent decree related to ADOC's failure to provide adequate access to Islamic services, ADOC agreed (a) "to hire a part-time Muslim Chaplain to provide group Islamic services for Muslim inmates," (b) to recruit and organize freeworld volunteers of 'NOI' and 'AMM'[6] Muslim denominations to provide *additional* services;" and, (c) "to voice Islamic concerns within the chaplaincy program of the ADOC." *Blue v. Arkansas Board of Correction*, No. 84-cv-551 (E.D. Ark. Aug 31, 1987) (emphasis added). Upon information and belief, the *Blue* consent decree remains in effect.

---

[5] *Taleem* classes are Islamic religious study classes.

[6] The acronym "AMM" is not defined anywhere in the consent decree. It appears to be a reference to another religion, like the Nation of Islam. At present, Plaintiffs are not aware of any "AMM" practitioners within ADOC, but are aware of adherents to the Nation of Gods and Earth, also known as the Five-Percent Nation.

*See, e.g., Shabazz v. Norris*, No. 5:03-CV-00401, 2007 WL 2819517, at *3 n.3 (E.D. Ark. Sept. 26, 2007) (recognizing continuing validity of consent decree).

57.     In the mid-2000s, two Muslim inmates brought two separate challenges related to the inadequacy of *Jumu'ah* services. One case resulted in a permanent injunction requiring ADOC to offer access to a pre-recorded *khutbah* when no live *khutbah* was available for *Jumu'ah*. *Shabazz v. Arkansas Dept. of Correction*, Case No. 5:03-cv-409 (E.D. Ark. 2005), *different issues aff'd*, 268 Fed. Appx. 487 (8th Cir. 2008). A second case resulted in a permanent injunction requiring ADOC to let Muslim inmates read aloud from the *Qur'an* during *Jumu'ah*. *Shabazz v. Norris*, No. 5:03-CV-00401, 2007 WL 2819517, at *7 (E.D. Ark. Sept. 26, 2007).

58.     These injunctions and the *Blue* consent decree have spurred ADOC policy changes.

### Defendants' Willful Failure to Provide Muslim Inmates Access to Religious Accommodations

59.     Defendants have refused to comply with their own stated policies, the injunctions mentioned above, and the *Blue* consent decree by willfully failing to provide for the religious needs of Muslim inmates.

60.     In fact, Defendants' deliberate indifference and failure to respect the religious differences between Islam, Nation of Islam ("NOI"), and the Nation of Gods and Earths ("NGE") has forced Plaintiffs and other Muslim inmates similarly situated to violate their core religious beliefs.

61.     Instead, ADOC has unlawfully forced Plaintiffs and other Muslim inmates to choose between attending a combined religious service led by adherents of NOI and/or NGE, or not attending any religious services at all, although the *Blue* consent decree explicitly requires ADOC to provide separate religious services for these separate religious faith groups. Neither attending services led by another faith nor skipping services fulfills Plaintiffs' religious obligations. The act of attending a religious service led by a different faith tradition is a violation of each Plaintiff's core religious

principles.

62.     If Plaintiffs or any other inmate misses multiple Friday services, ADOC policy removes their designation as "Muslim" and denies their access to other religious accommodations, including Ramadan[7] meals.

63.     Two of the Plaintiffs – Mr. Martin and Mr. Stewart – have chosen to attend the weekly combined religious services because they felt compelled to do so to maintain their designations as Muslim and to preserve their rights to other religious accommodations, such as participating in the Ramadan meal program.  Mr. Holt, on the other hand, has chosen not to attend the combined religious services in accordance with his sincerely-held religious beliefs, and as a result, in 2017 was forced to sacrifice his Ramadan and Eid religious accommodations.

64.     No other faith traditions, including various denominations of Christianity, are required to hold combined religious services.  No other faith tradition, including Christians, are denied access to religious accommodations based on not attending religious services.

65.     Despite over thirty years since the *Blue* consent decree was entered, Defendants have failed to hire sufficient part-time Muslim Chaplains to provide group Islamic services for Muslim inmates across ADOC facilities.  The lone Islamic Coordinator ADOC employs cannot practically provide services to all Muslims in all ADOC facilities.  Defendants have also failed to recruit adequate freeworld Muslim Volunteers to meet the needs of the Muslim inmate population, including leading *Jumu'ah* services and holding *Taleem* classes, in violation of their own policies.

66.     With a lack of Muslim chaplains and freeworld Muslim Volunteers, inmates in each facility conduct a combined Friday prayer service on their own.  However, the combined nature of

---

[7] Ramadan is the ninth month of the Islamic Calendar, which is based on a lunar calendar. Muslims worldwide observe Ramadan as a month of fasting. This annual observance is regarded as one of the Five Pillars of Islam. Among other things, while fasting from dawn until sunset, Muslims refrain from consuming food, drinking liquids, smoking, and sexual relations.

the service with three faiths participating means that it does not comply with the spiritual requirements of Islam.

67.     Plaintiffs have resided in more than a half dozen of the 18 ADOC units, including Tucker, Grimes, Cummins, Varner, Brickeys, and Calico Rock.  To Plaintiffs' knowledge and based on Plaintiffs' experience, ADOC combines Islamic, NOI, and NGE religious services in all ADOC units.

68.     To Plaintiffs' knowledge and based on Plaintiffs' experience, ADOC designates Islam, NOI, and NGE adherents all as "Muslim" in its internal systems.

69.     Defendants have similarly denied Plaintiffs and other Muslim inmates similarly situated access to separate *Taleem* classes, or religious study classes.  Instead, Plaintiffs and other Muslim inmates may only attend religious study classes that are combined with NOI and NGE.

70.     Upon information and belief, no other faith tradition, including Christians and Jews, are denied access to separate religious study classes.

71.     Defendants can recognize and accomodate the differences between the three faith traditions, as evidenced by their inconsistent attempts to do so in the past.  For example, Defendants have permitted adherents of NOI to commemorate the Million Man March, a holiday not recognized by Islam. Defendants have also recently posted a flier in the Tucker Unit which announces an upcoming "denominational service" for adherents of NOI.

72.     ADOC's deliberate and willful failure to recognize the religious differences between Islam, NOI, and NGE has caused significant tension and discord among inmate populations that adhere to Islam, NOI, and NGE across ADOC's facilities.

**The Disparity in Defendants' Provision of Separate Religious Services for Other Faiths**

73.     According to religious services calendars distributed in ADOC facilities, numerous Christian denominations may participate in a wide variety of weekly services, scripture studies, and

15

other religious programming.

74.     For example, at Tucker Maximum Security Unit, Catholic, Protestant, Jehovah's Witness, and Seventh-day Adventist religious services are held throughout the month.  Buddhist Dharma talks are also held regularly.  Christian Bible studies and other Christian programs are also held multiple times per week.

75.     Likewise, at the Grimes Unit, at least seven separate Christian denominations currently hold weekly religious worship services and instruction classes.  These include general Christian services, as well as separate religious services for Baptists, Catholics, Seventh-day Adventists, and Pentecostals.  Christian Bible studies and other Christian programs are also held multiple times per week.

76.     Unlike Muslims, Christians do not lose their rights to religious accommodations necessary to practice their faith if they fail to attend religious services.  For example, Christian inmates can attend special Christmas and Easter meals even if they do not attend Sunday services.

**Defendants' Refusal to Permit Religious Attire in Department Facilities**

77.     As part of their Muslim faith, Plaintiffs have a sincerely held religious belief that Islam instructs men to wear *kufis*, as an expression of their belief that they should be in a state of constant prayer and service to God.  Yet ADOC policy severely restricts Plaintiffs' wearing of *kufis*.

78.     The ADOC Religion Manual provides that "[an] [i]nmate may wear special religious headdress during religious service[s].  The headdress must not threaten the good order and security of departmental operations.  The headdress must be recognized by the inmate's denominational/mosque/synagogue/tribe as being essential to a particular sect's religious belief.  The headdress is to be worn in religious service only and kept in inmate's locker when not in use."  ADOC Religion Manual, Policy # 625(C)(1).

79.     RLUIPA protects "any exercise of religion, whether or not compelled by, or central

16

to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).  Following the Supreme Court's opinion in *Holt v. Hobbs*, 135 S. Ct. 853 (2015), the Fifth Circuit applied *Holt* to hold that the Texas Department of Criminal Justice had failed to justify its restrictions on a Muslim inmate wearing a *kufi*.  *Ali v. Stephens*, 822 F.3d 776, 794-797 (5th Cir. 2016).

80.     Defendants have, without identifying any compelling government interest, prevented Plaintiffs Holt, Martin, and Stewart, as well as other Muslim inmates similarly situated from wearing *kufis*.

81.     At one of the ADOC facilities that Plaintiff Stewart resided in, the warden at the facility exercised his discretion to permit the wearing of religious headwear outside of individual cells, including in common areas and outside the barracks.

82.     Upon information and belief, Defendants permit other faith groups to wear religious articles and religious head coverings outside of their individual cells and religious services.

### Plaintiff Gregory Houston Holt a/k/a Abdul Maalik Muhammad

83.     For nearly three years, Plaintiff Holt has repeatedly complained to Defendants regarding the combined religious services for Islam, NOI, and NGE.

84.     Plaintiff Holt filed a grievance asking for separate religious services in February 2016 while housed at the Cummins Unit.  Plaintiff Holt exhausted that grievance, which was ultimately denied.

85.     In 2017, having been transferred to the Tucker Unit, Plaintiff Holt began refusing to attend the combined religious services in accordance with his sincerely held religious beliefs.

86.     As a result of Plaintiff Holt no longer attending the combined religious services, Defendants in 2017 removed Plaintiff Holt from the *Jumu'ah* List, which resulted in his removal from the Ramadan List.  Plaintiff Holt did not receive Ramadan meals from Defendants that year, but

17

instead survived off of his own food he was able to purchase from the commissary. [8]

87.     In 2018, only upon the intervention of counsel, Defendants agreed to add Plaintiff Holt to the Ramadan List, although he continued to refuse to attend the combined religious services on Fridays throughout 2018.

88.     Plaintiffs Holt also filed a grievance requesting a religious accommodation allowing him to wear a *kufi*. Plaintiff Holt exhausted that grievance, which was ultimately denied.

89.     Plaintiff Holt has exhausted his administrative remedies in accordance with AR 835 – Grievance Procedure for Offenders.

90.     Plaintiff Holt reasonably fears that he may be subjected to retaliation for pursuing this litigation, including by Defendants transferring him out of Tucker Maximum Security Unit.

**Plaintiff Rodney Martin**

91.     Plaintiff Martin currently attends the combined religious services at Tucker Maximum Security Unit in violation of his sincerely-held religious beliefs because he feels compelled to do so to maintain his designation as a Muslim to preserve his rights to other religious accommodations that he receives.  After those combined religious services, Plaintiff Martin re-performs Friday prayers by himself, because the religious services he attends do not comply with what his Muslim faith requires.

92.     Recently, Plaintiff Martin's objections to the combined religious services have become so strong he has skipped the Friday services, and is considering ceasing attendance altogether.  Plaintiff Martin fears that he will lose his designation as "Muslim" and access to other religious accommodations if he ceases attending the combined services which violate his faith.

93.     Plaintiff Martin filed a grievance regarding the combined religious services, which was

---

[8] Ironically, two years prior to the removal of Plaintiff Holt's designation, the United States Supreme Court granted Plaintiff Holt the right to grow a beard as a religious accommodation in accordance with his sincere Muslim faith. *See Holt v. Hobbs*, 135 S.Ct. 853 (2015).

ultimately denied.

94.     Plaintiff Martin also filed a grievance requesting a religious accommodation allowing him to wear a *kufi*. Plaintiff Martin exhausted that grievance, which was ultimately denied.

95.     Plaintiff Martin has exhausted his administrative remedies in accordance with AR 835 – Grievance Procedure for Offenders.

96.     Plaintiff Martin reasonably fears that he may be subjected to retaliation for pursuing this litigation, including by Defendants transferring him out of Tucker Maximum Security Unit.

### Plaintiff Wayde Stewart

97.     Plaintiff Stewart currently attends the combined religious services at Tucker Maximum Security Unit in violation of his sincerely-held religious beliefs because he feels compelled to do so to maintain his designation as a Muslim and to preserve his rights to other religious accommodations that he receives.

98.     Plaintiff Stewart has filed a grievance regarding the combined religious services. Plaintiff Stewart exhausted that grievance, which was ultimately denied.

99.     Plaintiffs Stewart also filed a grievance requesting a religious accommodation allowing him to wear a *kufi*. Plaintiff Stewart also exhausted that grievance, which was ultimately denied.

100.    Plaintiff Stewart has exhausted his administrative remedies in accordance with AR 835 – Grievance Procedure for Offenders.

101.    Plaintiff Stewart reasonably fears that he may be subjected to retaliation for pursuing this litigation, including by Defendants transferring him out of Tucker Maximum Security Unit.

### Count I
### Violation of Religious Land Use and Institutionalized Persons Act
### (Religious Exercise – Separate *Jumu'ah* Services)

102.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

103. RLUIPA provides that prisons may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government proves that the burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a).

104. The Fifth Circuit recently recognized that RLUIPA affords adherents of the Nation of Gods and Earth the right to collectively worship separately from Islam. *See Tucker v. Collier*, 906 F.3d 295 (5th Cir. Oct. 3, 2018).

105. Plaintiffs have a sincere religious belief in Islam, including the belief that they should attend *Jumu'ah*, or Friday prayer services, with individuals who share their faith.

106. Defendants refuse to recognize Islam, NOI, and NGE as different faith traditions. Defendants thus force Muslims to participate in combined religious services with adherents of NOI and NGE, or forego congregational services altogether. Defendants' actions impose a substantial burden on Plaintiffs' sincere religious exercise.

107. Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise is not in furtherance of a compelling government interest. Separate religious services for Islam, NOI and NGE could be conducted consistent with the safety of inmates and staff, the good order of the institution, and accepted correctional practices. Such separate religious services are already conducted in federal, as well as other state, correctional systems.

108. The Supreme Court in *Holt v. Hobbs* granted Plaintiff Holt's religious request to grow a beard, holding that ADOC had failed to demonstrate how his beard would imperil safety and security. As in *Holt v. Hobbs*, ADOC here has provided insufficient explanation as to why separating Islam, NOI, and NGE religious services would harm any compelling interest related to ADOC operations.

109. Defendants' forced combination of Islam, NOI, and NGE religious services is not the

20

least restrictive means of furthering any governmental interest, compelling or otherwise.

110.    Defendants have failed to consider alternatives, or to implement less restrictive measures, regarding their current policy and practice of combining Islam, NOI, and NGE religious services.

111.    Defendants are not accommodating the diversity of worship for Islam, NOI, and NGE religious faith traditions on equal terms to Defendants' accommodations for and provisions of separate services for other faiths, including Buddhists and several Christian denominations.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below, in addition to all such other relief this Court deems just and proper under RLUIPA and 42 U.S.C. §§ 1983 and 1988, including costs and attorneys' fees in this action.

**Count II**
**Violation of First and Fourteenth Amendment to the United States Constitution**
**(Religious Exercise – Separate _Jumu'ah_ Services)**

112.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

113.    The First Amendment to the U.S. Constitution provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Free Exercise Clause applies with full force and effect to the acts of state and local government entities and officials pursuant to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

114.    The Free Exercise Clause protects inmates' right to engage in collective worship. _E.g. Young v. Coughlin_, 866 F.2d 567, 570 (2d Cir. 1989) ("We have long held that prisoners should be afforded every reasonable opportunity to attend religious services.").

115.    The Free Exercise Clause requires the government to act neutrally when evaluating and accommodating comparable practices by either comparable faiths or comparable secular entities.

*See generally, Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542 (1993) ("The Free Exercise Clause protects religious observers against unequal treatment.") (internal quotation omitted).

116.    The Free Exercise Clause prohibits prison officials from denying access to comparably-available religious accommodations provided to other faiths.  *See Maye v. Klee*, No. 18-1460, 2019 WL 613732, at *5, *8 (6th Cir. Feb. 14, 2019).  *Maye* concerned a Michigan prison's failure to provide equal access to the *Eid* feast between adherents of Islam and NOI.

117.    The foregoing RLUIPA claim (Count I) is also actionable under the Free Exercise Clause, because Defendants are burdening Plaintiffs' religious exercise in a manner that is neither equal nor neutral compared to Defendants' treatment of Christians and other comparable inmate groups.

118.    Defendants' policy and practice of combining Islam, NOI, and NGE religious services prevents Plaintiffs' exercise of religion.

119.    Defendants' policy and practice of combining Islam, NOI, and NGE religious services imposes a substantial burden on Plaintiffs' sincere religious exercise.

120.    Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise is not in furtherance of a compelling government interest.  Separate religious services for Islam, NOI, and NGE could be conducted consistent with the safety of inmates and staff, the good order of the institution, and accepted correctional practices.  Such separate religious services are already conducted in federal, as well as other state, correctional systems.

121.    Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise is not rationally related to any penological or government function.

122.    Defendants' policy and practice of combining Islam, NOI, and NGE religious services is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

123.    Plaintiffs have suffered the loss of their First Amendment freedoms by being unable

to attend religious services that comply with the dictates of their faith, and have thus incurred damages.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory, injunctive, and monetary relief in the form requested in the Prayer for Relief below, in addition to all such other relief this Court deems just and proper under 42 U.S.C. §§ 1983 and 1988 and the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et. seq.*, including costs and attorneys' fees in this action.

### Count III
### <u>Violation of Religious Land Use and Institutionalized Persons Act</u>
### (Religious Exercise – *Kufis*)

124.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

125.    RLUIPA provides that prisons may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government proves that the burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a).

126.    The Fifth Circuit recently recognized that RLUIPA requires the Texas Department of Criminal Justice to grant individualized religious accommodations to wear *kufis*. *Ali v. Stephens*, 822 F.3d 776, 794-797 (5th Cir. 2016).

127.    Plaintiffs have a sincere religious belief in Islam, including the belief that they should wear *kufis*.

128.    Defendants' prohibition on Muslim inmates wearing *kufis* outside of religious worship, imposes a substantial burden on Plaintiffs' sincere religious exercise.

129.    Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise is not in furtherance of a compelling government interest.  Defendants' could permit Muslim inmates to wear *kufis*, consistent with the safety of inmates and staff, the good order of the institution, and accepted correctional practices.

130.     Defendants have failed to consider alternatives, or to implement less restrictive measures, regarding their current practice of only permitting *kufis* during specified religious worship timeslots.

131.     Defendants' restrictions on *kufis* is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

132.     Defendants are not accommodating *kufis* on equal terms with other religious headwear and articles of clothing.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory relief and injunctive relief in the form requested in the Prayer for Relief below, in addition to all such other relief this Court deems just and proper under RLUIPA and 42 U.S.C. §§ 1983 and 1988, including costs and attorneys' fees in this action.

## Count IV
## Violation of First and Fourteenth Amendment to the United States Constitution
### (Free Exercise of Religion – *Kufis*)

133.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

134.     The First Amendment to the U.S. Constitution provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Free Exercise Clause applies with full force and effect to the acts of state and local government entities and officials pursuant to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

135.     The Free Exercise Clause protects inmates' right to wear religious head coverings.

136.     The foregoing RLUIPA claim (Count III) is also actionable under the Free Exercise Clause.

137.     Defendants' restrictions on wearing *kufis* prevents Plaintiffs' exercise of religion.

138.     Defendants' restrictions on wearing *kufis* imposes a substantial burden on Plaintiffs'

24

sincere religious exercise.

139.    Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise is not in furtherance of a compelling government interest.  Defendants already permit Plaintiffs to wear *kufis* in some circumstances, and other penal institutions permit inmates to wear *kufis* more often.  Defendants also permit other religious headwear and articles to be worn.  Defendants could permit Plaintiffs to wear *kufis*, consistent with the safety of inmates and staff, the good order of the institution, and accepted correctional practices.

140.    Defendants' imposition of a substantial burden on Plaintiffs' sincere religious exercise by denying them the ability to wear *kufis* is not rationally related to any penological or government function.

141.    Defendants' prohibition on wearing *kufis* is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

142.    Plaintiffs have suffered the loss of their First Amendment freedoms by being unable to wear *kufis* in compliance with the dictates of their faith, and have thus incurred damages.

WHEREFORE, Plaintiffs request this Honorable Court grant declaratory, injunctive, and monetary relief in the form requested in the Prayer for Relief below, in addition to all such other relief this Court deems just and proper under 42 U.S.C. §§ 1983 and 1988 and the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et. seq.*, including costs and attorneys' fees in this action.

### Prayer for Relief

WHEREFORE, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendants on each and every count in this Complaint, and issue an order awarding the following relief:

1.    A declaratory judgment that:

a.    Islam, Nation of Islam, and Nation of Gods and Earth are different faith

traditions;

b. Defendants' policies, practices, and customs, including the Department's combination of religious services and prohibition of *kufis*, violate the First and Fourteenth Amendments to the Constitution of the United States, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and 42 U.S.C. § 1983;

c. Defendants' actions in preventing Plaintiffs from attending Islamic religious services that are separate from Nation of Islam and Nation of Gods and Earth religious services prevents and substantially burdens Plaintiffs' free exercise of religion;

d. Defendants' denial of Plaintiffs' requests for separate Islamic religious services is not justified by a compelling government interest;

e. Defendants' failure to provide separate religious services for adherents of Islam, Nation of Islam, and Nation of Gods and Earth is not the least restrictive means of fulfilling a compelling government interest;

f. Defendants treat these Plaintiffs and similarly situated Muslim inmates on less than equal terms with other religious inmates; and,

g. Defendants' actions in preventing Plaintiffs from wearing *kufis* prevents and substantially burden Plaintiffs' free exercise of religion;

h. Defendants' denial of Plaintiffs' request to wear *kufis* is not justified by a compelling government interest;

i. Defendants' refusal to permit Plaintiffs to wear *kufis* is not the least restrictive means of fulfilling a compelling government interest;

2. An injunction that:

   a.   Requires Defendants to classify Islam, Nation of Islam, and Nation of Gods and Earth as separate religious classifications;

   b.   Requires Defendants to grant Plaintiffs and other Muslims the ability to congregate for separate Islamic religious services with other Muslims, and thereby worship separately from the Nation of Islam and Nation of Gods and Earth;

   c.   Requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, modifying or eliminating the existing policies whereby Plaintiffs, and other similarly-situated Muslim inmates, are unable to attend religious services with other Muslims;

   d.   Requires Defendants to grant Plaintiffs and other Muslims permission to wear *kufis*;

   e.   Requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, permitting Plaintiffs, and other similarly-situated Muslim inmates, to wear *kufis* outside of religious worship; and,

   f.   Forbids Defendants from transferring Plaintiffs to another facility for non-disciplinary reasons;

3.   Monetary damages consistent with 42 U.S.C. §§ 1983 and 1988 and the Prison Litigation Reform Act, 42 U.S.C. § 1997e et. seq.;

4.   Attorneys' fees, costs, and expenses of all litigation, pursuant to 42 U.S.C. § 1988; and,

5.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand a jury trial of the above-referenced causes of action so triable.

Respectfully submitted,

Dated: March 1, 2019

CAIR LEGAL DEFENSE FUND

By: _____

Lena F. Masri (D.C. # 100019) α
  lmasri@cair.com
Gadeir I. Abbas (VA # 81161) α β
  gabbas@cair.com
Carolyn M. Homer (CA # 286441) α
  chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317

DOUGLAS LAYCOCK (TX # 12065300)*
  dlaycock@virginia.edu
727 E. Dean Keeton St.
Austin, TX 78705
Phone: (512) 232-1224

*Attorneys for Plaintiffs*

α *Admitted to practice in this court*
β *Licensed in VA, not in D.C.*
  *Practice limited to federal matters.*
* *Pro hac vice* motion forthcoming

28

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Complaint and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated:  December  4 , 2018

By: _____
GREGORY HOUSTON HOLT a/k/a ABDUL
MAALIK MUHAMMAD, inmate # 129616;

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Complaint and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated:  December  4 , 2018                    By: _____

RODNEY MARTIN, inmate # 132396;

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Complaint and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated: December 4, 2018

By: _____
WAYDE STEWART, inmate # 065252;