FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 24 2020

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| Gregory Holt, et al., *Plaintiff,* v. Wendy Kelley, et al. *Defendants.* | CIVIL ACTION NO. 5:19-cv-81-BSM |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States respectfully submits this Statement of Interest to address the application of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, to "a program or activity that receives federal financial assistance." 42 U.S.C. § 2000cc-1(b). RLUIPA's definition of "program or activity" is broad, and it applies to all operations of a department or agency if any subdividion of that agency receives federal financial assitance. Because at least one division within the Arkansas Department of Corrections ("ADOC") receives federal financial assitance, the United States urges the Court to find that all components within ADOC must comply with RLUIPA.

**INTEREST OF THE UNITED STATES**

The United States submits this Statement of Interest because this litigation implicates the proper interpretation and application of RLUIPA. Pursuant to 28 U.S.C. § 517, the Attorney General is authorized "to attend to the interests of the United States" in any case pending in federal court. The United States Department of Justice ("DOJ") is charged with enforcing RLUIPA, *see* 42 U.S.C. § 2000cc-2(f), and therefore has an interest in supporting the proper and uniform application of the statute.

1

## BACKGROUND

Plaintiffs Gregory Holt, Rodney Martin, and Wayde Stewart are Muslim prisoners held in a facility maintained by Defendants, officials of the Arkansas Department of Corrections who are sued in their official capacities (collectively, "Defendants" or "ADOC"). Complaint, ECF No. 1, ¶¶ 20-33. As adherents to Islam, Plaintiffs allege that ADOC requires them either to attend combined Friday prayer services known as *Jumu'ah*, sometimes led by members of other religious groups such as Nation of Islam and Nation of Gods and Earth, or forego access to *Jumu'ah*. *Id.* at ¶¶ 2-7. Plaintiffs also allege that they are not permitted to wear *kufis*, religious headcoverings, in accordance with their sincerely held religious beliefs. *Id.* at ¶ 8. They allege that each of these policies substantially burdens their religious practice. *Id.* at ¶ 9.[1]

ADOC argues, in its motion for summary judgment, that the Court need not reach the merits of Plaintiffs' claims. Defendants assert that ADOC need not comply with RLUIPA because ADOC's Division of Correction does not receive federal funds. Defs.' Brief in Supp. Mot. for Summ. J. ("Defs.' Brief Supp. MSJ"), ECF No. 42 at 28-29 (abbreviating the Division of Correction as "ADC"). Specifically, Defendants contend that the Division of Correction, which is the subdivision of ADOC responsible for the facilities where Plaintiffs are held, has not received federal funds since the spring of 2016, and "does not receive any financial assistance from organizations distributing federal prison funding." *Id.* at 30.[2] Defendants have not disputed that other ADOC subdivisions receive federal funds.

---

[1] In this Statement of Interest, the United States takes no position on the merits of Plaintiffs' claims and addresses only the interpretation of RLUIPA's Spending Clause jurisdiction.

[2] ADOC also argues that RLUIPA does not apply because Plaintiffs do not allege any actions that affect interstate commerce. *See* Defs.' Brief Supp. MSJ at 28-29 (citing 42 U.S.C. § 2000cc-1(b)(2)); *id.* at 30-32. RLUIPA applies where the alleged substantial burden affects "commerce . . . among the several states." 42 U.S.C. § 2000cc(a)(2)(B). Plaintiffs do not appear to rely on this potential basis for RLUIPA liability.

Plaintiffs argue that ADOC does receive federal funds. Pls.' Opp. to Defs.' Mot. for Summ. J., ECF No. 56 at 2-5. For example, they allege that the Corrections School System, a division of ADOC, received federal funds during fiscal year 2017, and that the state receives federal Pell Grants and Second Chance Funds for use in ADOC's prisons and for rehabilitation purposes. *Id.* at 3-5 (describing these federal funding sources and providing citations); *see also id.* at 5 (citing grants under the federal government's Residential Substance Abuse Treatment (RSAT) for State Prisoner's Program, Bureau of Justice Assistance Award 2019-J2-BX-0038).

Publicly available information also demonstrates that ADOC receives additional federal financial assistance. In 2018, ADOC's Division of Community Correction received a grant of $999,817 from DOJ's Office of Justice Programs that is slated to continue through September 30, 2021, and in 2019 the same subdivision received a payment of $13,480 from the DOJ Criminal Division's Money Laundering and Asset Recovery Section.[3] The Arkansas State Budget for fiscal year 2020 includes a line item for "federal revenue" in the amount of $1,014,647 to the Division of Community Correction.[4] To the extent the Court deems it necessary to consider this information, the Court appropriately may take judicial notice of these facts from publicly available government records. Fed. R. Evid. 201(b); *see also Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017) (quoting Fed. R. Evid. 201(b)) (explaining that the Federal Rules of Evidence permit a court to take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined

---

[3] UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF JUSTICE PROGRAMS, Award 2018-AR-BX-K005, *available at* https://bja.ojp.gov/funding/awards/2018-ar-bx-k005; FY2019 ASSET FORFEITURE FUND REPORTS TO CONGRESS, Equitable Sharing Payments of Cash and Sale Proceeds by Recipient Agency, *available at* https://www.justice.gov/afp/page/file/1250751/download.

[4] Arkansas Department of Finance and Administration Budget, Fiscal Year 2020, *available at* https://www.dfa.arkansas.gov/budget/funded-budget/.

3

from sources whose accuracy cannot reasonably be questioned"); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records[.]"); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("[G]overnment documents are generally considered not to be subject to reasonable dispute . . . . This includes public records and government documents available from reliable sources on the Internet.").

Thus, even if the Division of Correction has not directly received federal funds in the last few years, ADOC itself continues to receive federal funds.

## ARGUMENT

RLUIPA applies to *all* of the operations of an entity that receives federal financial assistance, even if that assistance is provided to a division or subpart of the entity. Because subparts of ADOC receive federal funds, all divisions within ADOC—including the Division of Correction—are required to comply with RLUIPA's terms.[5] The text of RLUIPA and relevant case law lead to this result. Indeed, RLUIPA's Spending Clause jurisdiction is modeled on prior civil rights legislation, which courts have repeatedly interpreted as applying to the entirety of an agency's operations, even if only a subpart has received federal financial assistance.

### A. RLUIPA's Text Makes Clear That It Applies to All Operations of an Agency Receiving Federal Funds

RLUIPA restricts states from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution" in any case in which "the substantial burden

---

[5] *See* ADOC Organizational Chart, https://adc.arkansas.gov/organizational-chart (last visited June 12, 2020) (showing Division of Correction is part of ADOC).

is imposed in a program or activity that receives Federal financial assistance."[6] 42 U.S.C. § 2000cc-1(a), (b)(1) (the "Spending Clause"). RLUIPA defines "program or activity" to mean "all of the operations of any entity as described in paragraph (1) or (2) of section 2000d-4a of this title"—that is, as defined in Title VI of the Civil Rights Act. 42 U.S.C. § 2000cc-5(6). Title VI describes the "entity" to be "a department, agency, . . . or other instrumentality of a State." 42 U.S.C. § 2000d-4a. Accordingly, the plain text of RLUIPA makes clear that it applies not only to the specific part of an entity that receives federal funds, but rather to "all of the operations of" the "department" or "agency" that receives federal funds. 42 U.S.C. § 2000d-4a.

The statutory language from Title VI that RLUIPA incorporates was enacted specifically to ensure the broad application of the Spending Clause language at issue here. Responding to a Supreme Court decision that limited the impact of civil rights laws conditioned on the receipt of federal funds, *Grove City College v. Bell*, 465 U.S. 555 (1984), Congress enacted the Civil Rights Restoration Act of 1987 ("CRRA"), finding:

> (1) certain aspects of recent decisions and opinions of the Supreme Court have unduly narrowed or cast doubt upon the broad application of title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964; and
>
> (2) legislative action is necessary to restore the prior consistent and long-standing executive branch interpretation and broad,

---

[6] Federal financial assistance includes any money award or grant, and can include assistance in nonmonetary form. *United States Dep't of Transp. v. Paralyzed Veterans*, 477 U.S. 597, 607 n.11 (1986) ("Although the word 'financial' usually indicates 'money,' federal financial assistance may take nonmoney form."). Federal financial assistance also includes money that the entity receives indirectly. 42 U.S.C. § 2000d-4a (entities receiving federal financial assistance include those "that distribute[] such assistance and each such department or agency . . . to which the assistance is extended. . . ."); *see, e.g.*, *United States v. Hersom*, 588 F.3d 60 (1st Cir. 2009) (collecting cases and concluding, "[w]e view these Supreme Court cases as establishing that the term 'Federal financial assistance' generally refers to entities receiving federal funds—directly or indirectly—so long as they are the intended recipients of the federal legislation providing the assistance"); *Graves v. Methodist Youth Servs., Inc.*, 624 F. Supp. 429, 433 (N.D. Ill. 1985) (holding that a church-operated social-services organization that received federal funds indirectly through a state agency was subject to the Rehabilitation Act). Thus, if ADOC receives federal funds that were funneled through another department, it is obligated to comply with RLUIPA.

5

> institution-wide application of those laws as previously administered.

Pub. L. No. 100–259, 102 Stat. 28, 29 (1988). Through this legislation, Congress "clarif[ied] the application of" existing civil rights laws by defining "program or activity" in each of these statutes to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives or dispenses federal financial assistance. Pub. L. No. 100–259, 102 Stat. 28 (1988) (amending each of the four existing laws); *see also* 20 U.S.C. § 1687 (defining "program or activity" for purposes of Title IX); 29 U.S.C. § 794(b) (same, for the Rehabilitation Act); 42 U.S.C. § 6107(4) (same, for the Age Discrimination Act); 42 U.S.C. § 2000d-4a (same, for Title VI). When Congress passed RLUIPA in 2000, it incorporated the definition established by the CRRA by referencing the text of Title VI to define "program or activity" for purposes of RLUIPA. 42 U.S.C. § 2000cc-5(6).

In passing the CRRA, Congress explained it intended Title VI and its progeny to "be given the broadest possible interpretation." S. Rep. 100-64 at 7, 1988 U.S.C.C.A.N. 3, 9. The goal of the revised definition was to ensure "that the various civil rights statutes . . . would apply to the entirety of any state or local institution that had a program or activity funded by the federal government." *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (*quoting* S. Rep. No. 64, 100th Cong., 2d Sess. 16 (1988), *reprinted in* U.S. Code Cong. & Admin. News 1988, 3, 18) ("If federal health assistance is extended to a part of a state health department, the entire health department would be covered in all of its operations. If the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies which actually get the aid"). The Supreme Court subsequently recognized that by passing the CRRA

"Congress broadened the coverage of these antidiscrimination provisions in this legislation."

*Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 72-73 (1992).

### B. Courts Determining the Scope of Covered Programs and Activities in the Context of Title VI and Other Civil Rights Statutes that Use the Same Language Apply the Laws Broadly

Cases interpreting the scope of a covered program or activity under Title VI,[7] Title IX of the Education Amendments of 1972, and section 504 of the Rehabilitation Act of 1973 are instructive to determining the scope of RLUIPA's Spending Clause jurisdiction, because courts are interpreting the same statutory language in all of these contexts.[8] Courts consistently have interpreted the Spending Clause language at issue here to apply broadly to any agency or department whose sub-part accepts federal financial assistance.

In *Thomlison v. City of Omaha*, 63 F.3d 786 (8th Cir. 1995), for example, the Eighth Circuit considered this precise question, and held that the Rehabilitation Act applied to the Omaha Fire Division, which claimed to receive no federal financial assistance. *Id.* at 788-89. The court held that the Fire Division was subject to the Rehabilitation Act:

> We think that the City draws too fine a line. Throughout Thomlison's employment, the Fire Division comprised part of the Public Safety Department. The Public Safety Department also contained the Police and Communications Divisions. Although the

---

[7] Because Congress built subsequent civil rights statutes on Title VI, the Supreme Court explained, "Title VI is the congressional model for subsequently enacted statutes prohibiting discrimination in federally assisted programs or activities. We have relied on case law interpreting Title VI as generally applicable to later statutes." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 600 n.4 (1986) (interpreting the Rehabilitation Act of 1973).

[8] We have not identified any reported cases under RLUIPA directly addressing the question of whether an entire agency must comply with RLUIPA where one subdivision of the agency receives federal financial assistance. However, courts considering the scope of a covered program or activity under RLUIPA have applied RLUIPA broadly. *See, e.g., Al-Kadi v. Ramsey Cty.*, No. CV 16-2642, 2019 WL 2448648, at *7 (D. Minn. June 12, 2019) (finding federal funding of the sheriff's office that administers a facility sufficient to establish that the facility was subject to RLUIPA); *McKennie v. Texas Dep't of Criminal Justice*, No. A-09-CA-906-LY, 2011 WL 13237553, at *3 (W.D. Tex. May 24, 2011) (finding that RLUIPA applies to a prison food service program where the agency that oversees the prison receives federal financial assistance, because the entire agency "is a single program or activity"); *Bilal v. Lehman*, No. 04-2507-JLR-JPD, 2006 WL 8454748, at *3 (W.D. Wash. Mar. 16, 2006) (finding that RLUIPA applied where State Department of Social and Health Services received federal financial assistance even though the specific facility did not receive federal funds directly).

7

> Fire Division did not receive any federal assistance directly, other Public Safety Department divisions, including the Police Division, received federal funds. Because the definition of program or activity covers all the operations of a department, here the Public Safety Department, and part of the Department received federal assistance, the entire Department is subject to the Rehabilitation Act.

*Id.* at 789.

Across the country, courts have rejected attempts to limit the application of civil rights statutes to the specific operation or sub-division of an agency that receives federal funds. *See, e.g., Klinger v. Dep't of Corrections*, 107 F.3d 609, 615 (8th Cir. 1997) (for purposes of determining Title IX liability, "[t]he Nebraska prison system as a whole . . . does qualify as a 'program or activity' within the statutory definition," as opposed to individual prisons within the system); *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 200 (3d Cir. 2008) (explaining that section 504 applied to a county's probation and parole department because the domestic relations section of the same judicial district received federal funds, and "although a particular function or operation might be the State's only link to federal funds . . . [Title VI] applies to 'all the operations' of the entity receiving federal funds"); *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 271 (6th Cir. 1994) ("Congress has made clear its intent to extend the scope of Title IX's equal opportunity obligations to the furthest reaches of an institution's programs. We will not defeat that purpose by recognizing artificial distinctions in the structure or operation of an institution. . . . The Board runs the schools, and the [state high school athletic association], apparently funded in part through dues paid by the state's public schools, performs the Board's statutory functions. . . ."); *Radcliff v. Landau*, 883 F.2d 1481 (9th Cir. 1989) (finding that a law school was bound by discrimination provisions in Title VI based on any student's receipt of federal financial assistance); *White v. Engler*, 188 F. Supp.

8

2d 730, 745-47 (E.D. Mich. 2001) (rejecting a "program specific" approach to defining covered activities under Title VI and permitting claim against a scholarship program to proceed even though the scholarship operated without federal financial assistance, because the department received federal funds); *Huber v. Howard Cty.*, 849 F. Supp. 407 (D. Md. 1994) ("[I]f one part of a department receives federal financial assistance, the whole department is considered to receive federal assistance."), aff'd 56 F.3d 61 (4th Cir. 1995).[9] In accord with the statutory text and with Congress's stated intent, courts apply statutes like RLUIPA to entire departments rather than to sub-divisions or specific operations of an agency.

### C. All Arkansas Department of Corrections Operations Are Subject to RLUIPA's Requirements

As explained above, RLUIPA applies to *all* parts of an agency if *any* part of the agency receives federal funds. *See Thomlison*, 63 F.3d at 788-89. ADOC claims the Division of Correction stopped receiving federal funds in 2016, Defs.' Brief Supp. MSJ at 30, but this is insufficient to remove the Division from RLUIPA jurisdiction.[10] ADOC has not disputed, and indeed public records indicate, that other divisions of ADOC receive federal financial assistance. *See supra nn. 3-4*. RLUIPA applies to all of ADOC's operations, including the Division of Correction.

---

[9] Defendants cite *Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006), for the proposition that RLUIPA applies only to states that accept federal funds for their corrections systems, and a state may decline federal funds in order to avoid RLUIPA's conditions. *See* Defs.' Brief in Supp. MSJ at 29. That is a straightforward and unremarkable proposition. *Madison*, however, does not address the question of whether RLUIPA's Spending Clause applies to an entire agency whose subdivision accepts federal financial assistance. Rather, the *Madison* court held that RLUIPA's Spending Clause was constitutional, and that where funding was going to an operation of Virginia's prison system, it was constitutional to condition funds to that system on compliance with RLUIPA. *Madison*, 474 F.3d at 128.

[10] Defendants also appear to claim that Plaintiff must show that prisoners in the Division of Correction receive some direct benefit from the federal financial assistance. Defs.' Opp. to Pls.' Mot. for Summ. J., ECF No. 54 at 9 ("[N]o inmates within the custody of the ADC received any treatment or other benefits, direct or indirect, from the federal RSAT funds.") However, the "program or activity" inquiry has no such requirement. All that is necessary to establish jurisdiction over ADOC and its operations is that ADOC (the "program or activity") receives federal financial assistance.

## CONCLUSION

For the foregoing reasons, the Court should find that the Arkansas Department of Corrections is obligated to comply with RLUIPA.

Dated: June 24, 2020

                                        ERIC S. DREIBAND
                                        Assistant Attorney General
                                        Civil Rights Division

                                        STEVEN H. ROSENBAUM
                                        Chief
                                        Special Litigation Section

                                        TIMOTHY MYGATT
                                        Deputy Chief
                                        Special Litigation Section

                                        <u>/s/   Deena Fox</u>
                                        DEENA FOX  (DC Bar 992650)
                                        HELEN VERA
                                        Trial Attorneys for the
                                        Special Litigation Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        950 Pennsylvania Avenue, N.W.
                                        Washington, DC 20530
                                        Telephone: (202) 305-1361
                                        Email: <u>Deena.fox@usdoj.gov</u>

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2020, I provided an electronic copy of this filing to all counsel of record.

/s/ *Deena Fox*
DEENA FOX  (DC Bar 992650)