# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**GREGORY HOUSTON HOLT**                                                        **PLAINTIFFS**
**and WAYDE STEWART**

**v.**                      **CASE NO. 5:19-CV-00081-BSM**

**DEXTER PAYNE,** *et al.*                                                          **DEFENDANTS**

## ORDER

The Arkansas Department of Corrections must provide an in-room barrier separating plaintiffs from Nation of Islam and the Nation of Gods and Earths adherents during Jumu'ah prayer because doing so accommodates plaintiffs' sincere religious beliefs without compromising prisoner security. Alternatively, the ADC can provide separate rooms for plaintiffs.

## I. BACKGROUND

Plaintiffs Gregory Holt and Wayde Stewart are Muslim inmates who sued the ADC and its officers alleging that the Arkansas Department of Correction's ("ADC") Jumu'ah prayer policy violates the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.§ 2000cc, *et seq.*[1] At trial, plaintiffs argued that ADC policies violated RLUIPA by requiring them to pray alongside members of the Nation of Islam ("NOI") and the Nation of Gods and Earths ("NGE") (groups they view as non-Muslims) during Jumu'ah prayer, a Friday midday congregational service required by their religion.

---

[1] Gregory Holt is now in federal custody but his return to the ADC is possible. *See Holt v. Payne*, No. 4:25-cv-00699 (E.D. Ark. July 10, 2025).

After the trial and post-trial briefing, a ruling was entered in favor of defendants. The Eighth Circuit reversed and remanded with instructions to apply the standard set forth in its opinion.

The Eighth Circuit's opinion compels the finding that plaintiffs met their burden under RLUIPA with respect to the Jumu'ah service policy, although it appears to discount conflicting evidence regarding each of the plaintiffs' beliefs on separate Jumu'ah services. *See* Trial Tr. Vol. 2 at 317:15–318:3 (Stewart testified that the ADC's policy satisfies his ability to practice his religion); *id.* at 369:21–370:11 (now-terminated plaintiff Martin testified that he did not have a problem with NOI adherents attending Jumu'ah services if ADC policies were followed); *id.* at 435:15–24 (Holt testified that a joint service was appropriate and in accordance with Islamic law even when an NOI adherent was leading the prayer). My prior holding that the ADC has a compelling interest in prison security served by its Jumu'ah service policy was not disturbed on appeal and remains valid. That leaves only the question of whether that policy is the least restrictive means to address the ADC's compelling security interests, considering plaintiffs' proposed alternatives.

The ADC maintained at trial that it could only provide a single joint Jumu'ah service for Muslims and NOI and NGE adherents due to space limitations and a shortage of guards and chaplains. Trial Tr. Vol. 1 at 92:3–14, 118:13–16, 129:11–14, Doc. No. 160; Trial Tr. Vol. 3 at 570:23–572:5, Doc. No. 162. The ADC showed that at the time of trial, it was severely understaffed and having difficulties recruiting and retaining guards. Trial Tr. Vol. 1 at 158:17–159:13; 173:18–175:7, 236:6–21; Trial Tr. Vol. 2 at 274:6–24, 276:24–278:12; 489:5–14.

In response, plaintiffs proposed a number of alternatives to the current policy that would allow them to worship separately from NOI and NGE adherents: (1) holding consecutive (but shorter) Jumu'ah services in the same room with normal group transition, Trial Tr. Vol. 3 at 563:6–16; Trial Tr. Vol. 2 at 393:14–17; (2) holding consecutive (but shorter) services in the same room with NOI/NGE adherents and traditional Muslims moved in and out as one group with one part worshiping while the other sat to the side and then vice versa, Trial Tr. Vol. 3 at 563:9–16; Trial Tr. Vol. 2 at 393:14–17; (3) holding simultaneous services with a curtain or temporary wall between the two groups, Trial Tr. Vol. 2 at 320:9–16, 328:1–23; Trial Tr. Vol. 3 at 563:6–16; and (4) holding simultaneous services with the groups in different rooms. Trial Tr. Vol. 1 at 94:1–96:17. Plaintiffs showed that some ADC facilities had the space for simultaneous Jumu'ah services, Trial Tr. Vol. 1 at 155:11–16, and that some ADC facilities were able to accommodate multiple religious groups meeting at a time before the COVID-19 pandemic. Trial Tr. Vol. 1 at 82:15–86:24, 131:3–12, 158:3–10. The ADC presented testimony, however, that these options were not feasible because of its staffing shortage. Trial Tr. Vol. 1 at 92:3–14, 96:12–17, 129:11–14.

This case was tried in 2021 in the midst of significant labor market disruptions from the COVID-19 pandemic. *See generally* Trial Tr. Vol. 1 at 130:22–131:2. Since the pandemic has passed, discovery was reopened to evaluate staffing conditions at the ADC and briefings were filed discussing those conditions and RLUIPA's applicability.

## II. DISCUSSION

Courts considering a RLUIPA claim use a two-step framework: (1) whether plaintiffs

proved they had a sincerely held religious belief that was substantially burdened by the policies at issue; and (2) if so, whether defendants proved those policies were the least restrictive means of furthering a compelling government interest. *See Holt v. Hobbs*, 574 U.S. 352, 360–62 (2015). RLUIPA aims to ensure "greater protection for religious exercise than is available under the First Amendment." *Id.* at 357. Maintaining prison security is a compelling interest and RLUIPA is applied with "due deference to the experience and expertise of prison and jail administrators in establishing regulations to maintain good order, security, and discipline consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005) (citing 139 Cong. Rec. 26190 (1993)).

    A.    ADC Staffing Conditions

Levels of staffing at ADC facilities have remained largely unchanged since the pandemic. ADC Br. Resp. 10, Doc. No. 200. At the ADC's Delta Unit, 23.42% of positions were vacant in July of 2021 and in May of 2024 the vacancy rate rose to 25.93%. *Id.* The ADC's Tucker unit had a 63.16% vacancy rate in 2021 and a 52.11% vacancy rate in May of 2024. *Id.* I find that the staffing shortages continue to challenge prison order and security to an extent that makes assigning an additional guard for Jumu'ah services unreasonable.

    B.    Proposed Accomodations

        *1. Consecutive Jumu'ah Services Separated*

Plaintiffs argue that the ADC could hold two consecutive, but shorter, services. The problem with this proposed solution is two fold. First, prison security procedures would use up a substantial amount of the limited time available for Jumu'ah moving prisoners and

screening them. ADC Br. Resp. 4. Holt says that he would only attend Jumu'ah if it is a full length service. Ex. 5, Gregory Holt Deposition ("Holt Dep."), 112:1–10, Doc. No. 202. It is unlikely that this proposed alternative would provide meaningful relief.

### 2. Consecutive Jumu'ah Services in the Same Room

Plaintiffs argue that one less restrictive means of accommodating their prayer beliefs is to hold services in the same room, at the same time, and have one group of inmates perform services first and the second group hold their services second.

This proposed accommodation fails for two reasons. First, this would still divide the ninety-minute window for Jumu'ah prayer in two. Holt has indicated that he would not be interested in attending Jumu'ah if it were a shortened period. Holt Dep. 112:1–10. Second, Holt indicates he would be praying first and then being escorted out of the room, but would not accept being forced to be present while NOI adherents prayed. Holt Dep. 101:25–102:5. Stewart expressed the same concern. Ex. 6, Wayde Stewart Deposition ("Stewart Dep."), 14:25–16:19. This proposed alternative would give preferential treatment to his school of Islamic thought over NOI and NGE. This preferential treatment is likely to generate factional conflict undermining safety and may also violate the Equal Protection Clause. For these reasons, consecutive services are not a reasonable accommodation.

### 3. Simultaneous Services with a Curtain

The provision of a temporary wall or curtain is a reasonable accommodation and the ADC is directed to provide this accommodation for Holt and Stewart. The ADC argues that Holt himself insists that he must be in a completely separate room from NOI adherents.

While this is true, Holt also said that he would be satisfied if he is allowed to pray while NOI adherents were in the room as long as he left afterwards. Holt Dep. 101:15–20.

Providing a barrier that separates inmates during the Jumu'ah service gives Holt and Stewart independence from NOI and NGE worshipers. Though this solution may not be ideal, it gives plaintiffs a substantial accommodation without drawing ADC staff away from the safety and order of the prison.

*4. Simultaneous Services in Different Rooms*

For the reasons stated above, providing separate services in separate rooms requires extra staff and is, therefore, not a reasonable accommodation. *See Cutter*, 544 U.S. at 726 (stating that prisons may decline "requests for religious accommodations" that "jeopardize the effective functioning of an institution"). Although the ADC is not required to provide separate rooms, such an accommodation would satisfy its obligation under RLUIPA and the ADC is encouraged to provide this alternative when feasible.

### III.  CONCLUSION

For these reasons, judgment is entered for plaintiffs and the ADC must provide a barrier separating them from NOI and NGE adherents during Friday Jumu'ah service.

IT IS SO ORDERED this 8th day of August, 2025.

*[signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE